ATTEST: A TRUE COPY
CERTIFIED THIS

MAY 13 2003

Luther D. Thomas, Clerk
By:
Deputy Clerk

# ORIGINAL

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

MAY 13 2003

LUTHER D. THOMAS, Clerk
By: Deputy Clerk

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

Arrival Star, Inc.,

*Plaintiff,*

vs.

Delta Air Lines, Inc., Sabre, Inc., Travelocity.com, L.P., Roadway Express, Inc., Worldspan, L.P., FlyteComm, Inc., Centerpost Corporation, Continental Airlines, Inc., Japan Air Lines Company, Ltd., American Airlines, Inc., City of Atlanta, Electronics for Imaging, Inc., American Express Company, SITA Information Networking Computing USA, Inc.,

*Defendants.*

Case No.: 1:02-CV-2543-JOF

**DEFENDANTS' JOINT MEMORANDUM IN OPPOSITION TO ARRIVAL STAR'S MOTION FOR ENTRY OF PROTECTIVE ORDER AND DEFENDANTS' JOINT COMBINED CROSS-MOTION FOR ENTRY OF PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT**

Defendants oppose Arrival Star, Inc.'s Motion for Entry of Protective Order because Arrival Star's proposed order would allow party employees access to confidential technical information and, contemporaneously, to prosecute patent applications in the same field. The practical implication in this case would be that Arrival Star's Chief Executive Officer and inventor, Mr. Martin Kelly Jones,



100

would have access to defendants' confidential technical information while also continuing to prosecute numerous U.S. and foreign applications.

Regardless of whether Mr. Jones would have honorable intentions in that role (*see* Arrival Star's Memorandum in Support at 6), there would still be a significant and unacceptable risk that defendants' technical information would find its way into Arrival Star patent applications. There likewise would be an unacceptable risk that Mr. Jones would have unwarranted access to and use of the defendants' sensitive business information, including business plans, which could be used to compete in the notification field that Arrival Star seeks to enter and control through its patents. These risks are tantamount to providing defendants' trade secrets, technical and business, to a competitor.

One court faced with the identical issue excluded plaintiff's officer/inventor by reasoning that "[a]ccepting that plaintiff's president is a man of great moral fiber, we nonetheless question his human ability … to separate the applications he has extrapolated from defendant's documents from those he develops from his own ideas." *Safe Flight Instrument Corp. v. Sundstrand Data Control Inc.*, 682 F. Supp. 20, 22 (D. Del. 1988). Given that Arrival Star continues to attempt to expand its portfolio of patents on vehicle status notification systems, the only way to protect defendants' confidential technical information is to exclude Mr. Jones,

and other party employees with similar involvement in patent prosecution, from accessing such information.

Defendants[1] therefore move for entry of a protective order that is largely identical to that which Arrival Star has proposed, with the exception of whether party employees who are involved in patent prosecution in the relevant field as inventors can access protected information. Defendants have attached as Exhibit A their proposed protective order (the "Proposed Protective Order").

## I. INTRODUCTION

The parties have conferred at length about the Proposed Protective Order and agree with respect to most of its provisions.[2] The primary outstanding issue is thus who should have access to protected information.

---

[1] This Memorandum represents the views of defendants Delta Air Lines, Inc., Roadway Express, Inc., Worldspan, L.P., FlyteComm, Inc., Centerpost Corporation, Continental Airlines, Inc., Japan Air Lines Company, Ltd., American Airlines, Inc., City of Atlanta, Electronics for Imaging, Inc., and SITA Information Networking Computing USA, Inc., whose counsel have authorized the undersigned to file this memorandum on behalf of all of those named defendants. Defendants that Alston & Bird represents, Sabre, Inc., Travelocity.com, L.P., and American Express Company, are submitting a short memorandum incorporating this Memorandum and addressing those three defendants' alleged acquiescence to Arrival Star's positions on who should have access to information protected under a suitable protective order.

[2] *See* Arrival Star's Memorandum in Support at 2: "The parties agree that some

Defendants propose that any party employee involved in prosecuting patents in the field of vehicle status notification systems, as an inventor, should not have access to documents or other information designated "Confidential" or "Attorneys Eyes Only" under the Proposed Protective Order. Defendants' proposed language, along with the exclusion of such party employees from the list of Qualified Persons, is set forth in ¶¶6(d), 6(e) & 7(b) of the Proposed Protective Order.

Defendants collectively have invested substantial amounts of time, money and effort in developing their respective services/technologies. Disclosing highly confidential information regarding these technologies to individuals directing patent prosecution covering such technologies, and making strategic and competitive decisions regarding such technologies, poses an unacceptable risk to defendants. And Arrival Star need only retain an outside expert to review defendants' information, without an appurtenant risk to defendants. It is important that the Court appreciate that the proposed restrictions on party employee access apply equally to defendants, who may also have to retain outside experts to review Arrival Star's confidential technical information.

---

form of protective order is warranted, but disagree on a single point … whether

Arrival Star's position is also clear; Arrival Star asserts that its principal inventor and Chief Executive Officer should have access to all materials designated under the protective order because he is key to Arrival Star's decision making, occasionally referring to Mr. Jones and Arrival Star interchangeably.[3] As the arguments and authorities set forth below illustrate, Mr. Jones' central role in Arrival Star's technology-related decision making is precisely why he should not be allowed access.

In the recently-filed second amended complaint, Arrival Star asserts: "[t]he Arrival Star patents embody the inventions of Martin Kelly Jones, who has spent the last seventeen years conceiving, developing, studying and improving automation of vehicle communication services, including arrival notifications to individual persons. He has dedicated his working life and his life savings to the exploration and pursuit of novel, cutting-edge technologies and processes in this field, and has been recognized for his inventive contributions by the United States Patent and Trademark Office, which has granted numerous patents to him and his

---

Martin Kelly Jones [will have access to confidential information …."

[3] *See* Arrival Star's Memorandum in Support at 4: "The rationale of permitting legitimate collaboration in litigation should justify the refusal to permit the erection of a "Chinese wall" between the plaintiff and his own counsel.")

assignees in his chosen field. Mr. Jones is presently the Chief Executive Officer of Arrival Star." (*See* Second Amended Complaint ¶20.)

Given those concessions, it is manifest that Mr. Jones cannot extricate himself from Arrival Star's continued patent prosecution and that such prosecution has been the focus of considerable effort and investment on his part for many years. The Court should therefore enter the Proposed Protective Order in the form attached hereto, excluding party employees who are involved in patent prosecution as inventors in the relevant field.

## II. ARGUMENT

The question for the Court is whether to require that Arrival Star, as plaintiff, bear the burden of an outside expert or that defendants bear the risk that their technologies find their way into Arrival Star patent applications. A number of courts have articulated the applicable balancing test in addressing similar questions. *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1313 (11th Cir. 2001) (requiring that district court balance party's interest in gaining access to the other party's interest in maintaining information confidential); *Brown Bag Software v. Symantec*, 960 F.2d 1465, 1470 (9th Cir. 1992) (balancing the risk of disclosure of trade secrets to competitors against the

risk of impairing the litigation process).[4] The key factor in this assessment is whether a potential recipient of protected information is engaged in competitive decision making for another party. *Brown Bag Software,* 960 F.2d at 1470.

Competitive decision making refers to "advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *U.S. Steel Corp.*, 730 F.2d at 1468, n. 3. In many cases, involvement in prosecution of related patent applications has been equated with competitive decision making.[5]

---

[4] *See also U.S. Steel Corp. v. United States,* 730 F.2d 1465, 1468 (Fed. Cir. 1984) (requiring that courts determine whether access creates "an unacceptable opportunity for inadvertent disclosure").

[5] *See, e.g., In re Papst Licensing, GmbH, Patent Litig.*, 2000 U.S. Dist. LEXIS 6374, *12 (E.D. La. May 4, 2000) ("Counsel's ability to file new claims in existing and pending patents based on the confidential information discovered during the course of this litigation poses an unacceptable opportunity for inadvertent disclosure and misuse."); *Interactive Coupon Mktg. Group, Inc. v. H.O.T! Coupons, L.L.C.*, 1999 U.S. Dist. LEXIS 12437, *10 (N.D. Ill. Aug. 5, 1999) ("competitive decision making ... can extend to the manner in which patent applications are shaped and prosecuted"); *Davis v. AT&T Corp.*, 1998 U.S. Dist. LEXIS 20417, *7 (W.D.N.Y. Dec. 23, 1998) ("Allowing plaintiff access to this valuable, proprietary information without limiting his ability to apply for patents for a reasonable length of time would create an unwarranted risk of disclosure as well as a heightened risk of irreparable harm to defendants' competitive business concerns."); *Safe Flight Instrument Corp. v. Sundstrand Data Control Inc.*, 682 F. Supp. 20, 22 (D. Del. 1988) ("Accepting that plaintiff's president is a man of great moral fiber, we nonetheless question his human ability during future years of

In *Safe Flight,* the court entered a protective order excluding plaintiff's president and founder, an aeronautic engineer listed as inventor on numerous patents including the patents-in-suit, from access to confidential information produced during the course of discovery. 682 F. Supp. at 22. Specifically, the court provided three reasons supporting its decision.

First, there was significant potential for inadvertent disclosure of others' trade secrets in the course of prosecuting future patent applications. *Id.*; *see also Davis*, 1998 U.S. Dist. LEXIS 20417 at *9 (stating that "[I]f the hardship upon the plaintiff is too great [if ordered not to prosecute applications for some time after gaining access to confidential information], plaintiff has the option of foregoing access to the confidential information and restricting access to plaintiff's counsel and plaintiff's experts."). Second, plaintiff's claim that its president was "uniquely qualified" was speculative given the availability of qualified outside experts. *Id.* Third, plaintiff's concerns regarding its ability to evaluate and assess the economic merits of the litigation could be assuaged by designating "a non-technical officer to make such a business calculation in light of his/her review of the confidential

---

research to separate the applications he has extrapolated from defendant's documents from those he develops from his own ideas.").

documents, rather than an officer who is also a working scientist of the corporation." *Id.*[6]

Here, all three factors weigh against Mr. Jones having access. Mr. Jones is an inventor on fourteen or more pending U. S. patent applications and dozens of foreign applications and is the key officer responsible for Arrival Star's strategic and technical decision making. (*See* Exhibit B, excerpts from Arrival Star Website.) Many of the pending applications are continuations of the patents-at-issue, thus allowing one to examine defendants' technologies and to attempt to insert specific claims to encompass defendants' technologies - essentially a back door to covering defendants' technologies.

With that backdrop, Arrival Star's claim that it is not a "competitor" rings hollow. (*See* Arrival Star's Memorandum in Support at 2, "there is no head-to-head competition between Arrival Star, a patent licensing company, and any of the Defendants;" at 5 n.4, "Mr. Jones is not now working on, and has never worked

---

[6] *Compare Telelar Corp. v. Vox2, Inc.*, 2001 WL 64188, *1-*3 (N.D. Ill. June 4, 2001) (allowing access where proposed expert is not practicing in technology area); *Std. Space Platforms Corp. v. U. S.*, 35 Fed. Cl. 505, 508-09 (Fed. Cl. 1996) (Allowing plaintiff's CEO access where plaintiff is an inactive corporation and CEO is not practicing in technology area).

on, flight notification or package delivery services such as those implicated by the Amended Complaint.")

While it may be true that Arrival Star has not been successful in commercializing its alleged vehicle status notification technologies,[7] it is equally true that Arrival Star construes its patents and patent applications in that field to extend to "flight notification or package delivery services such as those implicated by the Amended Complaint." (*See* Arrival Star's Memorandum in Support at 5 n.4.)

Given the broad scope it seeks to attach to its patents and pending patent applications, Arrival Star envisions a clear role in the various markets in which defendants compete. Although Arrival Star may not be a traditional competitor in those markets in a strict economic sense, Arrival Star certainly seeks to be a force in those markets as a licensor. In that role, the better patent coverage Arrival Star is able to secure for emerging technologies, the more likely it can garner

---

[7] Mr. Jones has been the driving force for many years behind Global Research Systems and Buscall, entities that in fact brought vehicle status notification technologies to pilot studies and perhaps commercial application. (*See* Exhibit C, articles entitled "Buscall Beats Bus Stop Blues: Little-Used Control Channels Create a Shorter Wait," *Telephony Online*, February 23, 1998; "Satellites Used to Notify Kids Their School Bus Is Nearing," *Florida Today Space Online*, April 20, 1999; "Putting Parents on Notice," *Education Week*, May 5, 1999.)

significant royalties by licensing its intellectual property. By accessing defendants' technical information on current and emerging technologies, Arrival Star, through Mr. Jones, would be able to inject, even if inadvertently, those technologies into the pending applications. Arrival Star could thus improve its overall patent profile with respect to the current defendants and those Arrival Star may have in its sights for future infringement assertions.

Furthermore, Arrival Star has not even addressed the availability of qualified outside experts who could review defendants' confidential technical information without posing any risk to defendants. That is because there are many expert candidates with sufficient expertise in electrical engineering or computer science disciplines to serve as a suitable consulting or testifying expert for Arrival Star.

In fact, Arrival Star's counsel has already stated that Arrival Star has retained a suitable expert. Surely, Arrival Star's use of an independent expert to review defendants' information provides Arrival Star with the analysis it needs while also protecting defendants' confidential information from bleeding into future Arrival Star patents.

Under the rationale articulated in *Safe Flight* and the other authorities set forth above, allowing party employee-inventors contemporaneously involved in

patent prosecution to access defendants' confidential information poses unacceptable risks to defendants.

## III. CONCLUSION

Based on the facts and applicable authorities discussed above, defendants move for entry of the attached "[Proposed] Protective Order" and a ruling excluding Mr. Martin Kelly Jones, or any other party employee-inventors involved in prosecuting patents in the field of vehicle status notification systems, from access to information designated "Confidential" or "Attorneys Eyes Only."

Dated: this 13th day of May, 2003.

Respectfully submitted,

Samuel J. Najim
Georgia Bar No. 534209
Nagendra Setty
Georgia Bar No. 636205
David S. Kerven
Georgia Bar No. 416459
Julie A. Fleming,
Georgia Bar No. 262952

JONES DAY
3500 Sun Trust Plaza
303 Peachtree Street, N.E.
Atlanta, Georgia 30308-3242
Telephone: (404) 521-3939
Facsimile: (404) 581-8330

Steven E. Sigalow

*Pro Hac Vice*
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 4114-1190
Telephone: (216) 586-3939
Facsimile: (216) 579-0212

**ATTORNEYS FOR SITA INFORMATION NETWORKING COMPUTING, INC, CITY OF ATLANTA AND ROADWAY EXPRESS, INC.**

Vaibhav Kadaba /
William H. Boice (WHB) w/ express permission
GA Bar No. 065725
James L. Ewing, IV
GA Bar No. 253375
Vaibhav P. Kadaba
GA Bar No. 405727
KILPATRICK STOCKTON LLP
Suite 2800, 1100 Peachtree Street
Atlanta, Georgia 30309-4530
Ph: 404-815-6500
Fax: 404-815-6555

**COUNSEL FOR DEFENDANTS DELTA AIR LINES, INC. , CONTINENTAL AIRLINES, INC., JAPAN AIR LINES COMPANY, LTD. AND AMERICAN AIRLINES, INC.**

Scott Brown /
John Herman (NB) w/ express permission
GA Bar No. 348370

DUANE MORRIS LLP
1180 West Peachtree St., Ste. 700
Atlanta, Georgia 30309-3448
Ph: 404-253-6900
Fax: 404-253-6901

Scott R. Brown
*Pro Hac Vice*
Thomas B. Luebbering
*Pro Hac Vice*
HOVEY WILLIAMS, P.C.
2405 Grand Boulevard, Suite 400
Kansas City, Missouri 64108-2519
Ph: 816-474-9050
Fax: 816-474-9057

**COUNSEL FOR DEFENDANT WORLDSPAN, L.P.**

Michael Sobel
J. Rodgers Lunsford III / (RS) w/ express permission
GA Bar No. 461200
Elizabeth G. Borland
GA Bar No. 460313
SMITH, GAMBRELL & RUSSELL LLP
Suite 3100, Promenade II
1230 Peachtree Street, N.E.
Atlanta, GA 30309-3592
Ph: 404-815-3628
Fax: 404-695-6929

Michael Sobel
*Pro Hac Vice*
SQUIRE, SANDERS & DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA 94304-1043

Ph: 650-856-6500
Fax: 650-843-8777

**COUNSEL FOR DEFENDANT FLYTECOMM, INC.**

Andy McShane / w/ express permission

Douglas D. Salyers
GA Bar No. 623425
TROUTMAN SANDERS LLP
1600 Peachtree Street, NE
Suite 5200
Atlanta, Georgia 30308-2216
Ph: 404-885-3000
Fax: 404-885-3900

Antony J. McShane
*Pro Hac Vice*
NEAL, GERBER & EISENBERG
Two North LaSalle Street, Suite 2200
Chicago, Illinois 60602-3801
Ph: 312-269-8000
Fax: 312-269-1747

**COUNSEL FOR DEFENDANT CENTERPOST CORP.**

Russell B. Hill / w/ express permission

Jerry B. Blackstock
GA Bar No. 061000
Leslie B. Zacks
GA Bar No. 784110
Joel K. Gerber
GA Bar No. 291454
HUNTON & WILLIAMS

Bank of America Plaza
Suite 4100
600 Peachtree Street, N.E.
Atlanta, Georgia 30308-2216
Ph: 404-888-4000
Fax: 404-888-4190

Russell B. Hill
*Pro Hac Vice*
HOWREY SIMON ARNOLD & WHITE, LLP
2020 Main St., Suite 1000
Irvine, California 92614
Ph: 949-721-6900
Fax: 949-721-6910

James L Etheridge
*Pro Hac Vice*
Michael J. Munn
*Pro Hac Vice*
ELECTRONICS FOR IMAGING, INC.
1439 Cedar Street
San Carlos, California 94404

**COUNSEL FOR DEFENDANT ELECTRONICS FOR IMAGING, INC.**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| Arrival Star, Inc.,<br><br>*Plaintiff*,<br><br>vs.<br><br>Delta Air Lines, Inc., Sabre, Inc., Travelocity.com, L.P., Roadway Express, Inc., Worldspan, L.P., FlyteComm, Inc., Centerpost Corporation, Continental Airlines, Inc., Japan Air Lines Company, Ltd., American Airlines, Inc., City of Atlanta, Electronics for Imaging, Inc., American Express Company, SITA Information Networking Computing USA, Inc.,<br><br>*Defendants*. | Case No.: 1:02-CV-2543-JOF |

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document entitled "**Defendants' Joint Memorandum In Opposition to Arrival Star's Motion for Entry of Protective Order and Defendants' Joint Combined Cross-Motion for Entry of Protective Order and Memorandum In Support**" has been served in the manner indicated below and properly addressed to the following attorneys of record:

| COUNSEL FOR ARRIVAL STAR, INC. | |
|---|---|
| ☐ By Hand<br>☐ By Facsimile (w/o Exhibits)<br>☒ By US Postal Service (1st Class)<br>☐ By Overnight Delivery<br>☐ By Email | **Steven G. Hill**<br>sgh@hklaw.org<br>**Peter F. Schoenthaler**<br>pfs@hklaw.org<br>**Eric G. Maurer**<br>egm@hklaw.org<br><br>**HILL, KERTSCHER & PIXLEY, LLP**<br>3350 Riverwood Parkway, Suite 800<br>Atlanta, GA 30339<br>Fax No.: 770-953-1358 |

| COUNSEL FOR DELTA AIRLINES, INC., CONTINENTAL AIRLINES, INC. JAPAN AIR LINES COMPANY, LTD. AND AMERICAN AIRLINES, INC. | |
|---|---|
| ☐ By Hand<br>☐ By Facsimile (w/o Exhibits)<br>☒ By US Postal Service (1st Class)<br>☐ By Overnight Delivery<br>☐ By Email | William H. Boice<br>wboice@KilpatrickStockton.com<br>**James L. Ewing, IV**<br>jewing@KilpatrickStockton.com<br>**Vaibhav P. Kadaba**<br>wkadaba@KilpatrickStockton.com<br><br>**KILPATRICK STOCKTON LLP**<br>Ste. 2800, 1100 Peachtree St.<br>Atlanta, GA 30309-4530<br>Fax No.: 404-815-6555 |

| COUNSEL FOR SABRE, INC., TRAVELOCITY.COM, L.P. AND AMERICAN EXPRESS COMPANY | |
|---|---|
| ☐ By Hand<br>☐ By Facsimile (w/o Exhibits)<br>☒ By US Postal Service (1st Class)<br>☐ By Overnight Delivery<br>☐ By Email | **Patrick J. Flinn**<br>pflinn@alston.com<br>**Frank. G. Smith, III**<br>fsmith@alston.com<br>**J. Patrick Elsevier**<br>pelsevier@alston.com<br>**Cherri T. Gregg**<br>cgregg@alston.com<br><br>**ALSTON & BIRD LLP**<br>One Atlantic Center<br>1201 West Peachtree Street<br>Atlanta, GA 30309-3424<br>Fax: 404-881-7777 |

| COUNSEL FOR WORLDSPAN, L.P. | |
|---|---|
| ☐ By Hand<br>☐ By Facsimile (w/o Exhibits)<br>☒ By US Postal Service (1st Class)<br>☐ By Overnight Delivery<br>☐ By Email | **John C. Herman, Esq.**<br>jcherman@duanemorris.com<br><br>**DUANE MORRIS LLP**<br>1180 West Peachtree St., Ste. 7000<br>Atlanta, Georgia 30309-3448<br>Fax No.: 404-253-6901 |

| | |
|---|---|
| ☐ By Hand<br>☐ By Facsimile (w/o Exhibits)<br>☒ By US Postal Service (1st Class)<br>☐ By Overnight Delivery<br>☐ By Email | ***Of Counsel***<br>**Thomas B. Luebbering**<br>tbl@hoveywilliams.com<br>**Scott R. Brown**<br>srb@hoveywilliams.com<br>**Jason E. Gorden**<br>jeg@hoveywilliams.com<br><br>**HOVEY WILLIAMS**<br>2405 Grand Blvd., Ste. 400<br>Kansas, MI 64108-2519<br>Fax No.: 816-474-9057 |
| **COUNSEL FOR FLYTECOMM, INC.** | |
| ☐ By Hand<br>☐ By Facsimile (w/o Exhibits)<br>☒ By US Postal Service (1st Class)<br>☐ By Overnight Delivery<br>☐ By E-mail | **J. Rodgers Lunsford III**<br>rlunsford@sgrlaw.com<br>**Elizabeth G. Borland**<br>egborland@sgrlaw.com<br><br>**SMITH, GAMBRELL & RUSSELL, LLP**<br>Suite 3100, Promenade II<br>1230 Peachtree Street, NE<br>Atlanta, GA 30309-3592<br>Fax No.: 404-695-6929 |
| ☐ By Hand<br>☐ By Facsimile (w/o Exhibits)<br>☒ By US Postal Service (1st Class)<br>☐ By Overnight Delivery<br>☐ By Email | ***OF COUNSEL***<br>**Michael B. Sobel**<br>msobel@ssd.com<br><br>**SQUIRE, SANDERS & DEMPSEY, LLP**<br>600 Hansen Way<br>Palo Alto, CA 94305-1043<br>Fax No.: 650-843-8777 |

| COUNSEL FOR CENTERPOST CORP. | |
|---|---|
| ☐ By Hand<br>☐ By Facsimile (w/o Exhibits)<br>☒ By US Postal Service (1st Class)<br>☐ By Overnight Delivery<br>☐ By Email | **Douglas D. Salyers**<br>douglas.salyers@troutmansanders.com<br>**Kenneth R. Ozment**<br>kenneth.ozment@troutmansanders.com<br><br>**TROUTMAN SANDERS LLP**<br>600 Peachtree St., NE, Ste. 5200<br>Atlanta, GA 30308-2216<br>Fax No.: 404-885-3900 |
| ☐ By Hand<br>☐ By Facsimile (w/o Exhibits)<br>☒ By US Postal Service (1st Class)<br>☐ By Overnight Delivery<br>☐ By Email | ***OF COUNSEL***<br>**Anthony J. McShane**<br>amcshane@ngelaw.com<br><br>**NEAL GERBER & EISENBERG**<br>Two North LaSalle St., Ste. 2200<br>Chicago, IL 60602-3801<br>Fax No.: 312-269-1747 |

| COUNSEL FOR ELECTRONICS FOR IMAGING, INC. | |
|---|---|
| ☐ By Hand<br>☐ By Facsimile (w/o Exhibits)<br>☒ By US Postal Service (1st Class)<br>☐ By Overnight Delivery<br>☐ By Email | Jerry B. Blackstock<br>Leslie B. Zacks<br>Joel K. Gerber<br>**HUNTON & WILLIAMS**<br>Bank of America Plaza<br>Suite 4100<br>600 Peachtree Street, N.E.<br>Atlanta, Georgia 30308-2216<br>Fax: 404-888-4190<br><br>Russell B. Hill<br>**HOWREY SIMON ARNOLD & WHITE, LLP**<br>2020 Main St., Suite 1000<br>Irvine, California 92614<br>Fax: 949-721-6910<br><br>James L Etheridge<br>Michael J. Munn<br>**ELECTRONICS FOR IMAGING, INC.**<br>1439 Cedar Street<br>San Carlos, California 94404<br><br>**COUNSEL FOR DEFENDANT ELECTRONICS FOR IMAGING, INC.** |

this 13th of May, 2003.

Nagendra Setty

ATI-2054937v2

# EXHIBIT / ATTACHMENT

A

(To be scanned in place of tab)

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ARRIVAL STAR, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 1:02-CV-2543-JOF |
| v. | ) | |
| | ) | |
| DELTA AIR LINES, INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**[PROPOSED] PROTECTIVE ORDER UNDER FED. R. CIV. P. 26(c)**
**AS TO COMMERCIAL, TECHNICAL,**
**AND OTHER CONFIDENTIAL INFORMATION**

It appearing to the Court that a Protective Order under Rule 26(c) of the Federal Rules of Civil Procedure is necessary and appropriate and will facilitate discovery, IT IS HEREBY ORDERED THAT:

1. The parties and third parties may designate material or information whether embodied in documents, things, deposition testimony, interrogatory answers or other materials, as Confidential and/or Attorneys' Eyes Only.

2. (a) As hereinafter used, the term "Confidential Information" when employed by any of the parties or any non-party means material or information not known to the general public which is produced in this litigation by one party to the other or by a non-party, which the producing party deems to be confidential or

proprietary, including, but not limited to, business information, technical information, financial information, trade secrets, know-how, proprietary data, source code, object code or commercial information, and which is designated as Confidential in the manner described in Paragraphs 3, 5 or 15 hereof. Confidential information should not be shared by any party to these proceedings or its counsel with any person who is not a "Qualified Person" as defined in Paragraph 6 hereof.

(b) As hereinafter used, the term "Attorneys' Eyes Only Information" when employed by any of the Defendants in this action or any non-party, means material or information not known to the general public which is produced in this litigation by one party to another party or by a non-party that the party producing believes is confidential or proprietary information which should not be shared by any of the outside counsel to these proceedings with any person who is not a "Qualified Person" as defined in Paragraph 7 hereof and which is designated as Attorneys' Eyes Only in the manner described in Paragraphs 4, 5 or 15 hereof.

(c) "Confidential Information" and "Attorneys' Eyes Only Information" includes all such designated information, whether revealed during a deposition, in a document, in an interrogatory answer, by production of tangible evidence, in hearing(s) or trial transcripts, in responses to requests for admissions or is otherwise made available to counsel for either party in this action. The restrictions set forth in this Protective Order shall not apply to information and material which

(a) was, is, or becomes public knowledge, in a manner that is not in violation of this Protective Order or (b) is acquired from a third party lawfully possessing such information and/or having no obligation with regard to its disclosure.

3. Any document or portion thereof, including any transcripts, exhibits, answers to interrogatories, responses to requests for admissions or copies thereof, as well as physical objects, recordings or things, which a producing party believes to contain Confidential Information shall be so designated by stamping or otherwise applying thereto the designation "Confidential Subject to Protective Order", "Confidential", "Restricted Access", or "Restricted", and otherwise marked as provided under paragraph 8 of this Order in which case the designated document or portion thereof and the information contained therein will be treated in accordance with the terms of this Protective Order except that all documents and things made available for inspection and copying may be temporarily designated as Confidential Information during a document inspection or deposition and appropriately marked upon reproduction.

4. Any document or portion thereof, including any transcripts, exhibits, answers to interrogatories, responses to requests for admissions or copies thereof, as well as physical objects, recordings or things, which a producing party believes to contain Attorneys' Eyes Only Information shall be so designated by stamping or otherwise applying thereto the designation "Confidential-Attorneys' Eyes Only" or

"Attorneys' Eyes Only", and otherwise marked as provided under paragraph 8 of this Order in which case the designated document or portion thereof and the information contained therein will be treated in accordance with the terms of this Protective Order, except that all documents and things made available for inspection and copying may be temporarily designated as Attorneys' Eyes Only Information during a document inspection and appropriately marked upon reproduction.

5. All Confidential Information or Attorneys' Eyes Only Information not reduced to documentary, tangible or physical form or which cannot be conveniently designated pursuant to Paragraphs 3 or 4 shall be designated by the producing party or non-party by informing the requesting party in writing, and thereafter it shall be the responsibility of the requesting party to assure that any further disclosure or use of the information is thereafter limited in accordance with this Order.

6. With respect to all Confidential Information, "Qualified Person" shall mean:

(a) the attorneys of record for the plaintiff or a defendant;

(b) any technical expert, consultant or testing technician who is not engaged as an officer, director, or employee of the plaintiff, a defendant, a non-party defending any party to this litigation

under a reservation of rights, a non-party subject to an indemnification or defense agreement with a party, or any non-party that has been required to produce Confidential or Attorneys Eyes' Only Information in this litigation, or such other individual as the parties agree, serving such attorneys for the purposes of this case (up to a maximum of eight (8) for each party) who shall have read this Protective Order and who shall have signed a statement of the type described in Paragraph 12 hereof;

(c) third parties specifically retained to assist the attorneys of record or a party in translating, copying or computer coding, but only for purposes of translating, copying or computer coding of Confidential Information;

(d) not more than one designated in-house representative and two designated in-house counsel of each party. The identity of such in-house representative and in-house counsel shall be designated in writing and shall be subject to agreement between the parties. It is agreed that the designated in-house representative for a party shall not be any person actively involved in patent prosecution involving notification

technology to communicate vehicle status, location or arrival information;

(e) not more than one designated in-house representative and two designated counsel of each non-party that is defending any party to this Litigation under a reservation of rights and for each non-party subject to an indemnification or defense agreement with a party. The identity of such in-house representative and counsel shall be subject to agreement between the parties. It is agreed that the designated in-house representative for each such non-party shall not be any person actively involved in patent prosecution involving notification technology to communicate vehicle status, location or arrival information;

(f) not more than one designated in-house representative and two designated counsel for each non-party required to produce information in this litigation. It is agreed that the designated in-house representative for each such non-party shall not be a person actively involved in patent prosecution for that party as an inventor involving notification technology to communicate vehicle status, location or arrival information; and

(g) any paralegal, secretarial, or clerical personnel regularly employed by any Qualified Person who is working on matters relating to this action.

No other person shall become a Qualified Person without prior leave of Court or prior written consent of the producing party.

7. With respect to all Attorneys' Eyes Only Information, "Qualified Person" shall mean:

(a) the attorneys of record and the in-house counsel designated under Paragraph 6;

(b) any technical expert, consultant or testing technician, who is not engaged as an officer, director, or employee of the plaintiff, or any defendant, any non-party defending any party to this litigation under a reservation of rights, any non-party subject to an indemnification or defense agreement with a party, or any party that has been required to produce Confidential or Attorneys Eyes' Only Information in this litigation, or such other individual as the parties agree, serving such attorneys for the purposes of this case (up to a maximum of eight (8) for each party) who shall have read this Protective Order and who shall

have signed a statement of the type described in Paragraph 12 hereof;

(c) third parties specifically retained to assist the attorneys of record or a party in translating, copying or computer coding of documents, but only for purposes of translating, copying or computer coding of Confidential Information and/or Attorneys' Eyes Only Information; and

(d) counsel designated under Paragraph 6 for each non-party that is defending any party to this litigation under a reservation of rights, for each non-party subject to an indemnification or defense agreement with a party, and for each non-party that has been required to produce Confidential or Attorneys Eyes' Only Information in this litigation. The identity of outside counsel shall be subject to agreement of the parties; and

(e) any paralegal, secretarial, or clerical personnel regularly employed by any Qualified Person who is working on the matters related to this action.

8. Notwithstanding the foregoing, none of the defendants or non-parties, with the exception of their outside counsel of record, shall be entitled to receive or review any of the Confidential Information and/or Attorneys' Eyes Only

Information of any other defendant or any other non-party without the express written permission of the owner of the Confidential Information and/or Attorneys' Eyes Only Information. Any such information shall bear the further legend – PRODUCED TO PLAINTIFF OR DEFENDANT ______________ (name) NOT TO BE DISCLOSED TO OTHER DEFENDANTS OR NONPARTIES WITHOUT WRITTEN CONSENT OF ____________________(name).

9. All Confidential Information and Attorneys' Eyes Only Information shall be available only to Qualified Persons, shall be retained by them in strictest confidence and shall not be disclosed to any other person or used for any purpose other than this litigation without the prior written consent of the producing party or of the Court with notice given to the producing party along with an opportunity to reply nor used for any purposes other than in this litigation. All produced Confidential Information and Attorneys' Eyes Only Information shall be carefully maintained so as to preclude access by the officers, employees and agents of any party or non-party other than those designated under Paragraphs 6, 7 and 8 hereof.

10. Other than to assist counsel in the preparation associated with this case, all Qualified Persons shall conform strictly with any applicable federal law and laws of the State of Georgia related to the confidentiality of Confidential Information and Attorneys' Eyes Only Information. No such information shall be

used for any purpose other than preparation of this litigation and shall be governed by the terms of this Protective Order.

11. Before Confidential Information or Attorneys' Eyes Only Information is disclosed to any Qualified Person under Paragraph 6(b) or Paragraph 7(b), the party intending to disclose that information shall notify the designating party in writing of the identity, education, and employment history of the prospective recipient. No Confidential Information or Attorneys' Eyes Only Information shall be shown or in any way disclosed to the person so identified until expiration of a ten (10) day period in which the designating party may object to the disclosure. No disclosure shall be made while the designating party objects to the disclosure or until the Court orders otherwise. The party intending to disclose information to a Qualified Person may move the Court for an order granting access if the designating party objects to disclosure. The party opposing disclosure shall have five (5) days from actual service of such motion to file a reply. The Court shall then make a determination without further briefing, submission or hearing unless expressly requested by the Court.

12. Each such Qualified Person under Paragraph 6(b) or Paragraph 7(b) to whom Confidential Information and/or Attorneys' Eyes Only Information is to be disclosed, shall be given a copy of this Protective Order and its provisions shall be explained to them by an attorney. Each such person shall, in a written instrument

delivered to the opposing attorney prior to such disclosure, agree and acknowledge that he (or she) is fully familiar with the terms of this Protective Order or any amended or further order as the Court may enter in furtherance of this Protective Order and agrees to comply with and be bound by such Protective Order, by any further order of the Court. Such written assurance shall be in the following form:

WRITTEN ASSURANCE

_________________________, being duly sworn, states:

I reside at _____________________ in the city of ______________, county of __________________, state of ___________________;

I have read the Protective Order dated _________________ and am acting on behalf of ____________________________ in the preparation and conduct of, Case No. Civil Action No. 1:02-CV-2543-JOF (United States District Court for the Northern District of Georgia).

I am fully familiar with, understand and agree to comply with and be bound by the provisions of said Protective Order and by the jurisdiction of this Court thereover with respect to issues arising under this Protective Order; and

I will not divulge any designated Confidential Information, Attorneys' Eyes Only Information or material obtained pursuant to said Protective Order, and will not copy or use such information or material except solely for the purposes of my involvement in this Civil Action. However, it is understood that the restrictions set

forth in the above Protective Order shall not apply to information and material which (a) was, is, or becomes public knowledge, not in violation of this Protective Order or (b) is lawfully acquired from a third party lawfully possessing such information and/or having no confidentiality obligation with regard to its disclosure or use.

______________________________

Subscribed and sworn to before me
this ____ day of _______, 20___.

______________________________
Notary Public

Notary Public in and for the County of ___________________, State of ______________.

13. In the event the attorney of record for a party desires that a particular protected document be disclosed to anyone other than a Qualified Person, the parties shall meet and attempt to resolve the matter; if no agreement can be reached, the matter shall be referred to the Court for disposition. If an agreement is reached, or the Court decides that the document shall be disclosed, the person to whom disclosure is to be made shall give the "Written Assurance" set forth in Paragraph 12.

13. All documents of any nature which are filed with the Court for any purpose and which contain Confidential Information and/or Attorneys' Eyes Only Information shall be filed in sealed envelopes or other sealed containers which are marked with the caption of the action, which identify each document and thing there within and which bear a statement substantially in the following form:

**<u>CONFIDENTIAL – FILED UNDER SEAL</u>**

> "This envelope contains confidential information of ________________(name of party or non-party) and is not to be opened nor the contents thereof displayed, revealed or used except by order of the Court, upon notice to the entity identified above, or by agreement of the entity identified above."

14. Confidential Information and Attorneys' Eyes Only Information may be used in the course of any deposition of current employees or agents of the party or non-party designating such Confidential Information and Attorneys' Eyes Only Information. Confidential Information and Attorneys' Eyes Only Information may also be used in any other deposition with the consent of the party or non-party producing such Confidential Information and/or Attorneys' Eyes Only Information, such consent to be obtained more than three (3) days prior to such deposition unless the producing party agrees otherwise at the time. Such consent shall constitute no waiver of the confidential designation of the information so used.

16. Aside from deponents, professional translators and stenographic reporters serving the attorneys of record, only Qualified Persons will be allowed to attend confidential portions of depositions, and then only as to portions of the deposition involving confidential information they are otherwise entitled to receive under the terms of this Order.

17. Depositions or portions thereof as may contain Confidential Information and/or Attorneys' Eyes Only Information shall be separately bound in a confidential volume, marked "Confidential" and/or "Attorneys' Eyes Only" in accordance with Paragraphs 3 and/or 4 hereinabove (and otherwise marked by this legend in paragraph 8, as appropriate), and shall, if required, be separately filed as provided in Paragraph 14 above so as to distinguish such Confidential and/or Attorneys' Eyes Only deposition or Confidential and/or Attorneys' Eyes Only portions thereof from non-confidential, public depositions or public portions thereof. Confidential depositions or confidential portions thereof shall be fully subject to the relevant provisions of this Protective Order. At any deposition session, when counsel for a Party deems that a question and/or the answer to a question will result in the disclosure of Confidential Information and/or Attorneys' Eyes Only Information, counsel may designate as "Confidential" or "Attorneys' Eyes Only" the portion of the transcript containing such question or answer. Where appropriate in light of the amount of Confidential Information and

Attorneys' Eyes Only Information likely to be disclosed at a given deposition, outside counsel for the parties may agree at the beginning of the deposition that the entire transcript shall be designated Confidential and/or Attorneys' Eyes Only subject to review of the transcript and withdrawal of any unnecessary Confidential or Attorneys' Eyes Only designation or modification between designations of Confidential and Attorneys' Eyes Only within 30 days of receipt of the transcript.

18. Nothing in this Protective Order constitutes a finding that any of the information disclosed or contained in the designated document and things is or is not confidential or proprietary, and nothing herein shall prevent a party from contending, during the progress of this lawsuit, and upon notice to opposing counsel, that any or all of such information is not confidential or proprietary, or that such information was not publicly or commercially used. Grounds for such contention may include that such information is or was publicly known at or prior to disclosure thereof in this action, that such information, after disclosure thereof, has become public knowledge as a result of lawful publication by an independent source who obtained the information lawfully, that such information was previously known by the receiving party or that such information was later obtained in good faith by the receiving party from an independent source who obtained the information lawfully.

19. This Protective Order shall be without prejudice to the right of any party to oppose production of any information for lack of timeliness or relevance or materiality, or as a privileged communication, or as work product or counsel, or as not calculated to lead to the discovery of admissible evidence, or upon any other ground.

20. On final determination of this action, each party or other person subject to the terms hereof shall destroy or assemble and return to the producing party all originally produced materials, documents and things constituting Confidential Information and Attorneys' Eyes Only Information and all copies thereof, and shall collect and destroy all summaries, and abstracts thereof and all other materials, memoranda or documents constituting or containing Confidential Information and Attorneys' Eyes Only Information; providing, however, counsel of record for any party may retain one copy of any such item, which shall remain subject to this Protective Order, solely for reference in the event of any dispute over the use of or dissemination of information or material subject to the terms hereof. Within thirty (30) days of the final determination of this action, each party shall notify the producing party in writing that all such materials, documents and things have either been destroyed or returned to the producing party.

21. This Protective Order may be amended by the agreement of all counsel of record for the parties in the form of a stipulation, which shall be filed in this case.

22. If any Party objects to a designation of Confidential or Attorneys' Eyes Only, that Party may request the Designating Party to rescind the designation (or portion thereof). If the parties do not agree to rescind the designation then, in response to a written request particularly identifying specific documents, the producing party shall identify portions of the specified documents that are considered to reflect "Confidential Information" or "Attorneys' Eyes Only Information;" the party that desires that the particular documents be disclosed to someone other than a Qualified Person may then redact the identified portions and produce the redacted document to someone other than a Qualified Person. If the request to rescind is denied and the parties are unable to agree on the identification of Confidential or Attorneys' Eyes Only portions, the party seeking to make the disclosure, may move the Court for an order declaring that the information is not Confidential Information or Attorneys' Eyes Only Information protected by this Protective Order. Any information designated as Confidential or Attorneys' Eyes Only shall be treated as such until order of the Court to the contrary.

23. Any party for good cause may apply to the Court for a modification of this Protective Order.

24. In the event any party or third party inadvertently discloses material or information that is privileged (*i.e.*, subject to the attorney-client privilege or the attorney work product doctrine), whether embodied in documents, things, deposition testimony, interrogatory answers or other materials, the inadvertently disclosed material or information shall be promptly returned to the disclosing party upon written request. In the event that there is a dispute as to whether certain information or material is privileged, the party seeking to have the material returned may move for an order declaring that the information or material is privileged, without regard to its inadvertent disclosure. In the event the Court determines the information or material is privileged, then the parties in possession of the privileged information or material shall return said information or material to the disclosing party as soon as practicable.

25. In the event any party or third party inadvertently discloses material or information without a designation that was intended to be designated as Confidential or Attorneys' Eyes Only, whether embodied in documents, things, deposition testimony, interrogatory answers or other materials, the inadvertently disclosed material or information shall be promptly returned to the disclosing party upon written request within fifteen (15) days of the initial disclosure. The disclosing party will then have fifteen (15) days to provide properly designated versions of the disclosed material or information. If a recipient of the inadvertently

disclosed material or information has provided a copy of the material or information to someone other than a Qualified Person as defined herein, such a recipient shall verify that all such provided copies are returned or destroyed within seven (7) days of the written request and that the non-Qualified Person has not retained a copy of the material or information in any tangible form.

26. The fact that any counsel in this litigation (i) agrees to be bound by this Protective Order and/or (ii) receives Confidential Information or Attorneys' Eyes Only Information pursuant to this Protective Order may not be used to seek to disqualify any Party's counsel from their representation of any client, including without limitation, representation of counsel's current client, in any other matter.

SO ORDERED this ____ day of _______________, 2003.

_______________________________
UNITED STATES DISTRICT JUDGE

# EXHIBIT / ATTACHMENT

B

(To be scanned in place of tab)






ABOUT US

ArrivalStar Inc. is the world's leading innovator in location based messaging. After 17 years of research, development and technology trials we hold 28 patents in the field, 14 issued and more than 14 pending. ArrivalStar is an intellectual property (IP) licensing company for our location-based messaging solutions.

Our patented technology connects vehicle location information with people, delivering automated status notification via telephone, wireless device and the internet. The applications are broad based and include the transportation, cargo, mail, service and school bus sectors.



© 2002-2003 ArrivalStar Inc. All Rights Reserved.

the company the technologies the patents lice




summary patents listing

THE PATENTS

*Note to Reader: The descriptions contained on this web site are NOT reflective of the legal coverage of each of the claims of each patent. The legal scope of the protection afforded by each patent is defined by the claims of the patent(s), and may be considerably greater than what is described herein. The descriptions on this web site are merely an effort on the part of ArrivalStar to articulate certain characteristics (not necessarily required characteristics) of the patent specification which are of benefit to the reader in understanding certain embodiments of the inventions.*

BASE STATION APPARATUS AND METHOD FOR MONITORING TRAVEL OF A MOBILE VEHICLE
United States Patent, 6,486,801, Jones.

In general, the present invention provides an automated computer-based apparatus and method for efficiently monitoring travel of a vehicle along a predetermined route. The apparatus and method may be used in connection with, for example but not limited to, a tracking system or an advance notification system.

In a broad sense, the automated computer-based apparatus of the present invention includes a communications device and a base station manager located at a base station. The base station manager tracks locations of a vehicle traveling along a predetermined route by communicating with a vehicle computer-based apparatus on the vehicle. The vehicle computer-based apparatus determines the current location of the vehicle as the vehicle travels and transmits information pertaining to the vehicle's location to the base station manager via the communications device. The base station manager determines when the vehicle is a predefined proximity relative to a predetermined location and transmits a notification message to a user so that the user is notified in advance of an impending arrival of the vehicle at the predetermined location. The predefined proximity can be a predefined time that the vehicle is from the predetermined location, can a predetermined distance from the predetermined location, or can be a specific location on earth.

VEHICULAR ROUTE OPTIMIZATION SYSTEM AND METHOD
United States Patent, 6,510,383, Jones.

In architecture, the vehicular route optimization system of the present invention utilizes memory, a first communications device, and a data manager. The memory stores data indicating an order that a mobile vehicle is expected to arrive at a plurality of destinations. The first communications device receives a

request transmitted from a remote communications device, and the data manager, in response to the request, defines a new order that the mobile vehicle is expected to arrive at the plurality of destinations. The data manager also identifies one of the destinations and a particular time period based on the request and determines whether the vehicle is expected to arrive at the one destination during the particular time period, if the vehicle travels a route based on the new order. If the vehicle is expected to arrive at the one destination during the particular time period when the vehicle travels the route based on the new order, the data manager updates the data such that the data indicates the new order. The updated data can then be displayed to a driver of the vehicle, who follows the route based on the new order. Therefore, the vehicle should arrive at the one destination during the particular time period.

The present invention can also be viewed as providing a vehicular route optimization method. This method can be broadly conceptualized by the following steps: storing data, the data defining an order that a mobile vehicle is expected to arrive at a plurality of destinations; receiving a request for the vehicle to arrive at one of the destinations during a particular time period; analyzing the data in response to the request; determining whether to accept the request based on the analyzing step; modifying the order in response to a determination in the determining step to accept the request; rendering the data; and indicating the modified order via the rendering step.

SYSTEM AND METHOD FOR EFFICIENTLY NOTIFYING USERS OF IMPENDING ARRIVALS OF VEHICLES
United States Patent, 6,492,912, Jones.

In a broad sense, the invention can be viewed as providing a method for notifying users of impending arrivals of vehicles. The method can be broadly conceptualized by the following steps: storing data indicating when notification messages are scheduled for transmission to remote communications devices; determining that at least one of the notification messages is scheduled for transmission during a particular time period; determining a number of the notification messages that are scheduled for transmission during the particular time period; comparing the number to a threshold number; changing when the one notification message is scheduled for transmission in response to a determination that the number exceeds the threshold number; and notifying one of the users of an impending arrival of a vehicle via the one notification message.

SYSTEM AND METHOD FOR AUTOMATICALLY PROVIDING VEHICLE STATUS INFORMATION
United States Patent, 6,415,207, Jones, et. al.

The system of the present invention utilizes a database, a communication interface, and a system manager. The database stores status information associated with a vehicle, and the communication interface is designed to communicate with communication devices remotely located from the system. The system manager receives a message transmitted from the vehicle and updates the status information stored in the database based on the received message. When a remote communication device establishes communication with the communication interface, the communication interface receives caller identification information automatically transmitted to the communication interface. The system manager analyzes this caller identification information and automatically retrieves status information from the database based on the caller identification information. The system manager then transmits, via the

communication interface, the retrieved status information to the remote communication device.

The present invention can also be viewed as providing a method for monitoring and reporting status of vehicles. The method can be broadly conceptualized by the following steps: maintaining status information associated with a vehicle; communicating with a remote communication device; receiving caller identification information automatically transmitted in the communicating step; and automatically retrieving and transmitting the status information based on the caller identification information.

ADVANCE NOTIFICATION SYSTEM AND METHOD UTILIZING USER DEFINABLE NOTIFICATION TIME PERIODS
United States Patent, 6,411,891, Jones, et. al.

Briefly described, the present invention allows a user to define a preset notification time period when the user is to receive a notification message prior to arrival of a vehicle at a vehicle stop to thereby indicate impending arrival of the vehicle at the vehicle stop. The advance notification system comprises (a) a user communication device associated with the user, (b) a system control for monitoring travel of the vehicle in relation to the vehicle stop, and (c) a system communication interface for establishing communication between the system control and the passenger telephone when the vehicle is at a location that corresponds with the preset notification time period from said vehicle stop.

SYSTEM AND METHOD FOR ENCIPHERING AND COMMUNICATING VEHICLE TRACKING INFORMATION
United States Patent, 6,363,254, Jones, et. al.

In a broad sense, the present invention utilizes a sensor, a translation mechanism, and a monitoring mechanism. The sensor determines position values that represent a location of a vehicle relative to a first reference point. The translation mechanism receives the position values and translates the position values into translated values representing a location of the vehicle relative to a second reference point. The translation mechanism then transmits the translated values to a monitoring mechanism that tracks the vehicle based on the translated values received from the translation mechanism.

In accordance with another feature of the present invention, the translation mechanism mathematically combines the coordinate values of the second reference point with the position values to determine the translated values. In order to determine the vehicle's position relative to the first reference point, the monitoring mechanism mathematically combines the second reference point with the translated values received from the translation mechanism.

APPARATUS AND METHOD FOR MONITORING TRAVEL OF A MOBILE VEHICLE
United States Patent, 6,363,323, Jones, et. al.

In a broad sense, the automated computer-based apparatus of the present invention includes a sensor, a storage device, a communications device, and a computer processor. The sensor, for example, a satellite receiver, determines a current location value indicating a current location of a mobile vehicle. The storage device includes historical travel data pertaining to the vehicle schedule along the route. The historical travel data comprises a plurality of predetermined location values corresponding respectively with a plurality of locations along a predetermined route of travel of the mobile vehicle. The

predetermined location values are respectively associated with time values stored in the storage device. The processor uses one of the plurality of predetermined location values (along with its associated time value), a current time, and a current location value received from the sensor to determine whether the vehicle is off schedule. If the vehicle is off schedule by at least a predefined amount, the processor causes the communications device to transmit a message to a remote computer, associated with a tracking system or an advance notification system, indicating that the vehicle is off schedule by a specified time and/or distance. In the context of an advance notification system, the remote computer is thus enabled to change when a party is notified of an impending arrival of the vehicle, e.g., called via a telephone, based on the off schedule message transmitted via the communications device on the vehicle.

BASE STATION SYSTEM AND METHOD FOR MONITORING TRAVEL OF MOBILE VEHICLES AND COMMUNICATING NOTIFICATION
United States Patent, 6,317,060, Jones, et. al.

In a broad sense, once the schedule monitor determines that a user should receive a notification message, the schedule monitor transmits a notification request to the communication handler. The communication handler then establishes communication with a communication device associated with the user and transmits a notification message to the user. Therefore, the user is warned of an impending arrival of a vehicle at a particular location.

ADVANCE NOTIFICATION SYSTEM AND METHOD UTILIZING A DISTINCTIVE TELEPHONE RING
United States Patent, 6,313,760, Jones, et. al.

In accordance with a significant feature of the present invention, the telephone call to advise a passenger of the impending arrival of the vehicle preferably can exhibit a distinctive telephone ring sound so that the recipient need not answer the telephone in order to receive the message. Moreover, the distinctive telephone ring sound can be coded by any sequence and duration of rings and/or silent periods.

SYSTEM AND METHOD FOR AN ADVANCE NOTIFICATION SYSTEM FOR MONITORING AND REPORTING PROXIMITY OF A VEHICLE
United States Patent, 6,278,936, Jones, et. al.

In a broad sense, the present invention utilizes a storage mechanism, a data manager, and communications devices. The storage mechanism receives and stores travel information transmitted from a vehicle at a remote location. The travel information preferably includes data that indicates a location of the vehicle, such as the coordinates of the vehicle relative to a predefined reference point, but the travel information may include various other information in lieu of or in combination with the location data. When a user at another remote location wishes to view all or some of this the travel information transmitted by the vehicle, the user establishes communication with the data manager and submits a request. In response to the request, the data manager retrieves the desired information and transmits a message containing the information from a communications device at associated with the data manager to another communications device associated with the user. By analyzing this retrieved information, the user can monitor the travel of a particular vehicle.

In accordance with another feature of the present invention, a mapping system is designed to receive the travel data retrieved by the data manager and to

generate mapping data based on the retrieved travel data. The mapping data is transmitted to a device at the user's location which renders the mapping data as a graphical display indicating the location of the vehicle on a map. By viewing the map, the user can monitor the travel of the vehicle.
This Patent reveals monitoring and communicating travel data by the system to users that request travel information on a particular vehicle. This patent focuses on an end-user requesting information from an advance notification system and getting a response based on system preferences or end-user preferences that have been previously setup in the system.

ADVANCE NOTIFICATION SYSTEM AND METHOD UTILIZING PASSENGER CALLING REPORT
United States Patent, 5,668,543, Jones, et. al.

In accordance with a significant feature of the present invention, a calling report generator in the BSCU allows a subscribing passenger to solicit a calling report from the BSCU. The report can indicate the time(s) and outcome(s) of any previous notification attempt(s) by the BSCU to the passenger telephone.

ADVANCE NOTIFICATION SYSTEM AND METHOD UTILIZING VEHICLE PROGRESS REPORT GENERATOR
United States Patent, 5,657,010, Jones, et. al.

In accordance with a significant feature of the present invention, a vehicle progress report generator is employed in the BSCU for permitting a passenger to solicit from the BSCU via a telephone link a vehicle progress report relating to arrival of the vehicle at the stop. When the vehicle is approaching the stop, a time period indicating when the vehicle is to arrive is specified by the BSCU, and when the vehicle has already arrived at the stop, an arrival time is specified in the progress report.

ADVANCE NOTIFICATION SYSTEM AND METHOD UTILIZING PASSENGER DEFINABLE NOTIFICATION TIME PERIOD
United States Patent, 5,623,260, Jones, et. al.

In accordance with a significant feature of the present invention, a preset notification time period mechanism is employed in the BSCU. This mechanism permits the passenger to define a preset notification time period when the passenger is to receive a telephone call prior to arrival of a vehicle at a vehicle stop to thereby indicate impending arrival of the vehicle at the stop. The preset notification time period can be provided by the passenger to BSCU by depressing touch tone buttons on the passenger telephone or some other telephone (preferably, after a security feature is accommodated). If the period is not prescribed by the passenger, the default for the notification time period is set to any suitable period, such as five minutes. Moreover, the passenger prescribed time period or the default time period is announced to the passenger.

ADVANCE NOTIFICATION SYSTEM AND METHOD
United States Patent, 5,400,020, Jones, et. al.

Briefly described, the present invention is an advance notification system for notifying passengers of an impending arrival of a vehicle as the vehicle progresses along a scheduled route with particular stop locations and corresponding scheduled times of arrival at the stop locations. The advance

notification system generally comprises a vehicle control unit disposed on each vehicle and a base station control unit which is configured to communicate with all of the vehicle control units.

top of page



© 2002 - 2003 ArrivalStar Inc. All Rights Reserved.

United States District Court ★ Northern District of Georgia ★

# EXHIBIT / ATTACHMENT

C

(To be scanned in place of tab)

Case 1:02-cv-02543-JOF Document 100 Filed 05/13/03 Page 52 of 58

TELEPHONY ONLINE
A PRIMEDIA Publication

# BusCall beats bus stop blues: Little-used control channels create a shorter wait

Stephania H. Davis

**Telephony, Feb 23, 1998**

Combining underused aspects of the cellular network with other technology, several companies have developed a service that will keep schoolchildren from waiting too long for school buses.

BusCall is being tested in Bemidji, Minn. Parents who subscribe to the service will get a phone call that lets them know when the bus is coming before they send their children outside to wait.

BusCall is a product of Global Research Systems, a company based in Rome, Ga., that develops vehicle tracking and messaging technologies. School buses are equipped with a BusCall unit, and global positioning system satellites track the buses as they drive on their routes. The information is relayed via the cellular network control channels to a computer system at the local telephone company.

In this case, Paul Bunyan Telephone notifies the subscriber families by calling their landline phone with a distinctive ring and playing a message such as, "School bus number 44 will be arriving at your bus stop in five minutes and 21 seconds."

Families, who pay a modest per-month fee for the service, can also be notified via e-mail, a pager or a cellular phone. Subscribers also can call into the BusCall system for bus arrival information.

Kelly Jones, president and CEO of Global Research Systems, came up with the idea for BusCall in the 1980s.

"I observed a kid standing in the rain waiting for the bus in a dangerous area and saw the same person standing there 25 minutes later," he said. "I thought there had to be a better way, and I'm just weird enough to chase my own ideas."

BusCall is made possible by BellSouth's Cellemetry Data Service, a wireless technology that enables consumers to monitor a variety of equipment remotely-including copy machine meters and burglar alarms-using the existing cellular network's control channels. Cellemetry-a blend of cellular and telemetry-is sold to regional cellular carriers. A single, centralized service bureau enables carriers to put Cellemetry service to work in all their markets without requiring infrastructure modifications or sales distribution costs.

"Most data services are arranged for humans to talk to humans, but Cellemetry is for machines to talk to machines," said Edward Comer, director of the BellSouth Cellemetry Business Unit.

"In instances like BusCall, where small amounts of data are relayed at only a couple of times a day, it's a win-win situation," he said. "And the control channels earn no revenue now. This is a way to earn some revenue off them and allow service providers to offer another valuable service to their

In Bemidji, Rural Cellular Corp. is the licensed distributor of the Cellemetry service.

"We are committed to improving the lives of the people in the communities we serve," said Richard Ekstrand, president and CEO of Rural Cellular Corp. "Rural Cellular strives to be the most innovative cellular carrier."

The technology eventually could be applied to city buses, subways and other forms of scheduled transportation, Jones said.

"A lot of people are tired of waiting on vehicles to arrive," he said. "We're hoping to develop other products that reduce that downtime."

DEAL IMPROVES DISTRIBUTION IDT Corp. and Andrea Electronics Corp. have agreed to bundle IDT's Net2Phone software with Andrea's Anti-Noise computer headsets and handsets. The agreement enables IDT to increase its distribution channels for Net2Phone in key markets in the U.S., Latin America and Europe.

NEW SLOGAN TOUTS NEW IMAGE Sprint has launched a new $30 million advertising campaign to build its image at offering data communications applications and solutions to businesses. The slogan is "Business runs on data. Data runs on Sprint."

© 2003, Primedia Business Magazines and Media, a PRIMEDIA company. All rights reserved. This article is protected by United States copyright and other intellectual property laws and may not be reproduced, rewritten, distributed, redisseminated, transmitted, displayed, published or broadcast, directly or indirectly, in any medium without the prior written permission of PRIMEDIA Business Corp.

© 2003 Primedia Business Magazines and Media. All Rights Reserved. PRIMEDIA BUSINESS | Contact Us |

# FLORIDA TODAY Space Online

*"Planet Earth's best source for online space news"*

BOEING
KENNEDY SPACE CENTER VISITOR COMPLEX
Canaveral
MELBOURNE International Airport
on
CRUISE VACATIONS

April 20, 1999

## Satellites used to notify kids their school bus is nearing

**Copyright © 1999, The Associated Press. All rights reserved. This material may not be published, broadcast or re-distributed directly or re-directly.**

DESTIN, Fla. (AP) - It was a rainy morning in Georgia when Kelly Jones got the inspiration for BusCall, a system that uses satellites and telephones to let kids and their parents know when it's time to catch the school bus.

Jones was a tennis pro at a club in Marietta, Ga., in the mid-1980s and had gone to get something for breakfast when he saw a girl about 5 years old waiting for her bus. She was standing in the downpour dangerously close to heavy traffic that was whizzing by her street corner.

"Twenty minutes later I drive by and she was still there, still waiting," Jones recalled. "It was so alarming to me that I just couldn't shake the thought. Over time, it just kind of got underneath my skin."

A self-taught technology buff who majored in psychology at Jacksonville State University but never graduated. Jones began researching patents. He found only failed attempts to come up with something to ensure children get to their bus stops on time - not too early or late - regardless of whether the bus is on schedule.

It took many years, some new technology and help from engineers at NASA and Georgia Tech, but Jones finally developed a workable system.

"I was a maverick by nature," the 38-year-old newlywed said over the telephone from Vancouver, Canada, where he and wife, Lori, plan to live. "I was the kid, when I was young, that took the toy apart to play with it."

The system is being marketed by Destin-based NotiCom LLC, a joint venture of Global Research Systems Inc.. It was founded by Jones in Rome, Ga., and LaBarge Inc., of St. Louis, which makes BusCall's hardware at its Tulsa, Okla., electronics plant.

Global Positioning System satellites, used to guide aircraft, boats and even cruise missiles, track the buses.

A lunch box-size GPS unit is on every bus. It uses a low-cost cellular data channel to constantly report the location of the bus to a control station that automatically telephones subscribers as the bus approaches in the morning and again when children are dropped off after school.

The first systems recently went into operation at Marshall, Minn., and Bangor, Maine. Before that, BusCall was tested over the winter with about 40 families who have children at Scenic Heights Elementary School in Pensacola.

Melissa Stuckey had to drive her 5-year-old kindergartner, Emily, to school when she missed her bus a couple times before they got BusCall, but never during the test period.

"Every morning I would get a phone call when the bus was approximately five minutes from my home," she said. "That gave Emily enough time to get her backpack, her lunch box, her coat on, turn the TV off and get out to the bus."

The stay-at-home mom said BusCall can be even more vital for working parents who must leave home before their children. Missing a bus can mean those children spend the day at home alone, she said.

BusCall allowed Emily to avoid long waits in cold weather as well as potential trouble with other kids at the bus stop, her mother said. It also can reduce exposure to traffic hazards and "stranger danger," said NotiCom president David Hall.

Hall said BusCall is being marketed to local, long distance and cellular telephone companies that pay for it by selling the service to parents. Monthly fees can range from $5 to $20.

"One company might decide to give it away at a very low price in order to get penetration into a market where maybe another company doesn't feel they have the competitive pressures and they just want to maximize their revenue," he said.

NotiCom is in Destin to be near two defense contractors in neighboring Fort Walton Beach. The Tasc Division of Litton Industries and Tybrin Corp. write software for BusCall as well as weapons systems developed at nearby Eglin Air Force Base.

The invention also can be used with transit buses, taxis and transportation systems for the elderly and disabled, but NotiCom is focusing on school buses for now, Hall said.

The Pensacola test ended after a couple months, leaving parents and school officials disappointed to lose BusCall, said Jerry Caine, director of operations for the Escambia County School District.

As an incentive, most phone companies will offer free to each participating school system a base station with a computer screen that indicates the status and map position of every bus, Hall said.

Caine said it is a great advantage in managing a large fleet and provides an extra margin of safety. Each GPS unit has an emergency button, but managers also know something is wrong if a bus unexpectedly stops.

"Watching the buses move on screen down a street," Caine said, "there's something about that that is real, real impressive."

---

Space Today Next Launch Space Station Visit the Space Coast Archives Search Space Online

Use of this site signifies your agreement to the Terms of Service updated February 1998.
Please e-mail comments or questions about this page to Space Online Editor Mark DeCotis.
Contact Space Online Manager Jim Banke to inquire about becoming a sponsor.
This World Wide Web site is copyright © 1999 FLORIDA TODAY.

News Features Home Source JobSearch Classified Marketplace floridatoday.com

# Take Note

## Putting parents on notice

Melissa Stuckey likes the idea of standing on the edge of technology, especially if it keeps her 5-year-old from missing the school bus.

Ms. Stuckey is one of several dozen parents who have helped test BusCall, a new system that aims to make missing the bus a thing of the past.

Employing the same satellite technology used to guide aircraft and boats, BusCall can track the location of school buses on their route.

The system places an automated phone call to parents to notify them that the school bus is approaching. BusCall is provided as a service through local telephone companies and paid for by parents who choose to subscribe. Parents can designate the amount of notification time they receive, usually five to 15 minutes.

"You could set your watch to it," Ms. Stuckey said of the system. Her daughter, Emily, attends Scenic Heights Elementary School in the Escambia school district in Pensacola, Fla. The 800-student school tested BusCall from January to March.

Ms. Stuckey said that before she used BusCall, she usually had to drive her kindergartner to school at least once a week when Emily missed the bus. During the time the family volunteered to use the system, her daughter never missed the school bus.

The benefits of the system are twofold: safety of schoolchildren and fleet management, said David Hall, the president of NotiCom llc, the company that developed and markets BusCall. The Destin, Fla.-based company is a joint venture of LaBarge Inc. and Global Research Systems Inc.

The system keeps children safe from the hazards of weather, traffic, and strangers, said Mr. Hall, adding that "the less time a child spends at the bus stop, the safer the child is going to be."

In addition, he said, district bus dispatchers are able to know the precise location of buses.

The system is being marketed to local phone companies, which would in turn offer the service to parents for an estimated $9.95 a month. In general, the service would cost school districts nothing, Mr. Hall said.

NotiComhas signed contracts with the Marshall, Minn., and Bangor, Maine, districts for BusCall. The Marshall schools are in the process of signing up parents; Bangor is still installing equipment.

The BusCall system could be the ultimate safety device, said Jerry Caine, the director of operations for the Escambia district, which operates 360 buses a day.

**--Adrienne D. Coles**

## On the Web

Find out more about BusCall.


© 1999 Editorial Projects in Education
Vol. 18, number 34, page 3
15:37:54